JONAS P. MAGNUSSON

v.

JOHN A. CHARLSON, IMPLEADED, ETC.,

*Mortgages—Bill to Have Title Declared an Equitable Mortgage—Petition to Intervene—Reversal—Res Adjudicata—Evidence—Stipulation—Decree—Costs.*

Magnusson v. Charlson.

1.   The petition of a mortgagee, in a mortgage executed *pendente lite* by the complainant, in an action brought to have defendant's title declared an equitable mortgage, the mortgagee being complainant's solicitor, for the right to intervene, the petition having been filed after issues joined and the report of the master filed, was properly dismissed by the court below.

2.   Upon the reversal of a decree by this court and the remanding of the case to the court below without directions, it is only bound by the law as determined by this court, and as to such matters of fact, passed upon by this court, as were not changed upon the rehearing by additional evidence, and to that extent only can the case be said to be *res adjudicata.*

3.   It is unnecessary for this court to pass upon the admissibility of evidence admitted by the chancellor upon the hearing before him, a court of equity being presumed to determine cases upon *competent* evidence alone.

4.   In the case presented this court holds, that it was proper to require the complainant to pay into court within thirty days the amount found to be due to defendant; that the requirement was supported by the stipulation under which the accounting was had, and that as complainant was seeking to redeem from an alleged equitable mortgage he must be regarded in equity as bringing the amount due into court.

5.   The question of costs is largely in the discretion of the chancellor hearing the cause, and in the present case that discretion was properly exercised.

[Opinion filed December 16, 1889.]

In error to the Circuit Court of Bureau County; the Hon. Francis Goodspeed, Judge, presiding.

Mr. William Davis, for plaintiff in error.

Mr. A. R. Mock, for defendant in error.

Upton, P. J.   On the 10th of June, 1874, the plaintiff in error filed his bill in equity against John A. Charlson, the defendant in error, and others, in the Circuit Court of Henry County, the scope and object of which was to have the court declare the title by which the defendant in error, Charlson, held eighty-six acres of land in that county and particularly described in the bill an equitable mortgage, with a prayer for leave to redeem, and for an accounting between himself and defendant in error Charlson, whom he alleged had long been in possession and receipt of the rents, issues and profits

thereof. The original case was before this court at the May
term, 1881, and was then given careful consideration, and many
of the points now presented were then passed upon. For
results then arrived at, and views then entertained, we refer
to the opinion then filed, which will be found reported in 9
Ill. App. 194. A restatement further of the original case is
therefore deemed unnecessary.

The decree then before us was reversed and the cause re-
manded. Upon being redocketed in the Circuit Court it was
retried on the same evidence in substance, with additional evi-
dence heard upon the retrial.

Upon redocketing the suit in the Circuit Court the plaintiff
in error by leave of court filed a supplemental bill in which he
sets out the stipulation of August 31, 1874, which is recited
in full in the opinion of this court in 9 Ill. App. *supra*, and
states that before that stipulation was executed, Charlson,
the defendant in error, claimed the eighty-six acres in ques-
tion as his own, and that plaintiff in error claimed to be en-
titled to redeem, and to a conveyance from Charlson, and after
setting out the order of reference in the original case, the
master's report, the interlocutory decree of 13th December,
1875, the final decree dismissing the bill, the appeal to this
court, the reversal of the decree below in this court, and the
remand of the cause to the Circuit Court, etc., claims that
Charlson, defendant in error, was indebted to plaintiff in error
for the rents of the lands in question from 1876 to 1881, in-
clusive, and which it is alleged defendant in error had received,
and for the years 1876 to 1882 inclusive, for what rent could
and ought to have been obtained as rent therefor, but for
wilful neglect of defendant in error asks an accounting there-
for; and after averring the insolvency of defendant in error,
alleges the intent of defendant in error to sell, transfer or
mortgage the land in question to some one ignorant of rights
of plaintiff in error thereto, or that he intends to pull down or
destroy the buildings thereon standing, unless restrained by
the court for so doing, and concludes with the averment that
the defendant in error, Charlson, holds the legal title to the
land in question as trustee for the plaintiff in error, in equity;

that the equitable title is in the plaintiff in error, and that he
is entitled to a deed thereof from Charlson.  Prayer for an
accounting for rents and profits and all matters in difference
between defendant and plaintiff in error; that the land be con-
veyed to him—and for an injunction preventing incumbrances
or waste, and for general relief, to which supplemental
bill Charlson filed answer.  Johnson and Stackhouse upon
filing a disclaimer were dismissed from the suit; exceptions
were then filed to the answer of Charlson, which exceptions
were overruled and exception taken thereto.    Replication to
the answer was filed and the cause was referred to Millchrist,
a notary, as special commissioner, to take testimony for both
parties and report the same to the court.  The commission
having taken the proof and filed the same in the court below,
the master in chancery as directed therefrom stated an
account between the parties, and filed the same, from which it
appeared that there was due from the plaintiff in error,
Magnusson, to the defendant in error, Charlson, on the 1st day
of July, 1883, the sum of $1,478.01, to which report and
finding of the master both plaintiff and defendant in error
excepted, and filed their exceptions in writing in the court
below at the December term, 1883.

On the 13th day of December, 1883, after the filing of
the said report of the master, William Davis filed in the
court below his petition for leave to intervene and inter-
plead in this cause, claiming such right in his petition by
virtue of a certain mortgage deed upon the land in question,
made and executed by the plaintiff in error to the petitioner,
William Davis, on December 1, 1881, to secure to Davis a
note of even date with said mortgage for $2,000, and seeking
to re-open and re-investigate matters already heard and deter-
mined in the suit, and claiming priority under such mort-
gage, to any decree to which the court below might render
in favor of defendant in error, Charlson, on the report of
the master then on file.

This mortgage to Davis was made and executed long after
the stipulation of August 31, 1874, was entered of record in
this suit, of wh'ch Davis, then acting as solicitor for plaintiff

in error, as shown by the record, must have had notice, in which it was stipulated between plaintiff and defendant in error "That if in the accounting (contemplated by such stipulation) anything should be found due Charlson, such sum should be chargeable on the land," etc.   On motion of defendant in error filed in the court below, that court ordered the said petition stricken from its files, to which ruling Davis excepted, and brings his writ of error on the same record filed by the plaintiff in error in the case, and errors are assigned in that behalf.

The ruling of the court below in refusing to allow Davis to intervene, we think, was correct.   Whatever rights Davis obtained by the deed of mortgage from plaintiff in error as against Charlson, were entirely dependent upon the result of the litigation then pending, in which Davis was acting as solicitor for plaintiff in error, and all evidence which could have been given in the case made by the petition for the right to interplead was admissible under the issues joined in the original suit, which had at the time of filing such petition been closed on both sides, and the report of the master filed, except it might have informed the court of the existence of the Davis mortgage.

Besides, whatever rights Davis acquired under the mortgage were certainly acquired pending the litigation as to Magnusson's rights and interest in the land sought to be mortgaged, and if in that litigation it should be determined Magnusson had no rights or interest in the land, certainly Davis could acquire nothing by his mortgage.   Of this litigation, its scope and consequences, Davis was fully apprised.   In taking the mortgage "*pendente lite*" Davis was a mere volunteer, and in the case at bar had nothing to protect, for Magnusson had no interest in the land to convey by mortgage or otherwise.   Durand v. Lord, 115 Ill. 614; Herrington v. McCollum, 73 Ill. 476, and cases therein cited.

On the 24th of March, 1884, on further hearing of the parties, the master in chancery made and filed an additional report as to receipts and expenditures by Charlson, itemized

and filed in the court below, from which it was found that on the 21st of March, 1884, there was due and owing from the plaintiff in error, Magnusson, to defendant in error, Charlson, $1,472.79, to which exceptions were filed and overruled, and exceptions taken; and on the 22d of March the reports of the master were by the court below approved and confirmed, and a final decree was entered in the cause, that the amount so found by the master on statement of accounts be paid by Magnusson, plaintiff in error, to defendant in error, Charlson, with interest thereon at six per cent, or deposited with the clerk of the court subject to the order of Charlson, within thirty days from that date, and in default thereof that the original and supplemental bills be dismissed, and that plaintiff in error pay all the costs of the suit. The case was brought to this court by writ of error, and is before us for review of the errors assigned upon the record.

The first point to which our attention is called is the contention of plaintiff in error that all matters involved in this litigation which occurred prior to the rendition of the former decree, 13th December, 1875, are "*res adjudicata.*" We can not assent to that proposition. The case was reversed and remanded without directions, and the Circuit Court upon that remand was only bound by the law as there determined, and to such matters of fact as were not changed by additional evidence, and to that extent only. Chickering v. Failes, 29 Ill. 301; Cable v. Ellis, 120 Ill. 138; Quayle v. Guild, 91 Ill. 384.

.It is further contended that the trial court erred in admitting Charlson's "Exhibit A," and in the overruling of motion to suppress his deposition. Regarding the admissibility of evidence in a court of equity on hearing before the chancellor, little need be said further than this, that a court of equity determines the case only upon the competent evidence, and from that alone, and it is no more difficult to determine what is competent when admitted, than to determine the same thing upon rejection; besides, in the case at bar, neither the exhibit nor the deposition could have changed the result.

The $150 allowed for money paid to Johnson for his share

of the rent of 1872 was allowed on new evidence, and appears to us to be fully supported thereby. Charlson charged himself with the entire crop for that year. The $200 note given by Charlson to Johnson as difference in value between the two eighty-acre tracts of land, which Magnusson got the benefit of, was properly allowed, as we held before, and no new evidence has been taken on that point. The claim of Magnusson for $26 for broom-corn press was, as we think, properly rejected, as was intimated on the former hearing. The allowance upon the basis of actual receipts of rents and profits for the years 1875 to 1884 was correct, as was before held. The rent of 1884 should not be allowed; it was in evidence that the renting season commenced about March 1st, and only twenty days of that year had elapsed, and no rent had or could then have accrued. The expense account, aggregating $739.34, was the same as allowed when the case was here before, and, as we find no additional evidence in regard thereto to change the views then expressed, we think it was properly allowed.

The fact that Charlson stated, as claimed, that the one-half of this expense amount was his, being true, in no way disproves the claim that Charlson paid Johnson the same amount for his half of expenses.

There was allowed the plaintiff in error in the accounting all the receipts for rents and profits of the land in question, which Charlson ever obtained in cash or crops, and if Johnson paid any part of the expenses Charlson had to account to him for what he so paid. Charlson got the entire crops and has fully accounted for the same, and we see no force in the suggestion made. The statute of limitations did not apply; it was a *running* account and in litigation.

The item of $14 on broom corn was correct and was properly allowed. The improvements charged were properly allowed as necessary and *proper* repairs. It was also proper to allow the $1,650, being the one-half part of the Price mortgage, and the interest thereon to February 1, 1867, according to the face of the note. Charlson was compelled to take up the note from the holder, by purchase or payment, to protect

his own title and interest, and he should be allowed for what he actually paid in so doing, and interest according to the terms of the note which he was thus compelled to purchase. Condict v. Flown, 106 Ill. 105.

We are of the opinion that the answer of Charlson to the supplemental bill was sufficient, and that the exceptions thereto were properly overruled. It is absurd to say that Charlson paid the note secured by the Price mortgage and intended it as a gift to the plaintiff in error. The rejection of the lease and trust deed could make no difference, and were properly rejected; they proved nothing in the case in favor of the plaintiff in error.

It is contended, with great persistency, that the court below erred in requiring the amount found due from the plaintiff in error, $1,472.29, to be paid in thirty days, and several cases determined by the Supreme Court in this State have been pressed upon our attention as decisive upon this question, and most certainly are so, if applicable to the case before us.

In Magnusson v. Johnson, 73 Ill. 156, it was held that the same arrangement and transaction for which this suit is brought, did not create the relation of mortgagor and mortgagee, and was not an equitable mortgage, and that Magnusson had no right to redeem, nor interest in the land under the contract.

It will be seen on examination of the stipulation of August 31, 1874, *by virtue of which alone this accounting was had,* that it was expressly provided, "that in case it should be found on such accounting that anything is due from complainant (Magnusson) to Charlson, that in confirmation of such report of the master a decree be entered requiring complainant to pay the amount so found due *on a day named by the court,* and on default of such payment that the complainant's (Magnusson's) bill be dismissed," etc., and that the complainant be "forever barred," etc. Besides, as to Magnusson he certainly ought not to be heard to complain of the time given in the decree for the payment of the account there found due, as he was seeking by this proceeding to redeem the land from a claimed equitable mortgage, and consequently must be regarded in

equity as bringing the amount which should be so found due into court, and tendering the same when so ascertained. Therefore, as to him, no length of time need be given.

The decree was in strict accord with the spirit and meaning of the stipulation. At the time of its rendition the Supreme Court had expressly determined that Magnusson had no right of redemption as mortgagor or interest otherwise in the land in question. It surely can not be contended that the stipulation gave to Magnusson any right to or interest in the land he did not before possess, for the stipulation expressly provides that all questions relating to the title to the land are excepted from its operation.

It is conceded the law is, in this State, that decrees in chancery directing the sale of real estate for the non-payment of money should give at least ninety days (in analogy to the return day of an execution to law) for the payment, in cases *when there is no right of redemption from such sale*, as in cases of strict foreclosure or bills to redeem. All the cases cited by plaintiff in error go to that extent and that only. What analogy exists between the class of cases cited and the one at bar, we are unable to perceive.

The predicate of the cases cited is, and its application is limited to that class of cases, where a party would be cast in his estate by a sale, by operation of law. In the case at bar not only is there no sale of the estate, but at the time of the rendition of the decree below there *was no estate of the plaintiff in error to sell*, either legal or equitable, in the premises in controversy. It is true that at the time of the making the stipulation of Aug. 31, 1874, it was contemplated that plaintiff in error, Magnusson, might have some interest therein; and to determine that question a suit was then pending in the Supreme Court (Magnusson v. Johnson, *supra*) which was decided adverse to the plaintiff in error, Magnusson, some time after making the stipulation. Hence, both parties in view of these facts, expressly stipulated that the question of Magnusson's rights or title to this land should in no manner be inquired into or involved in the suit at bar.

We think, therefore, that the court below committed no

error upon that point. It is further insisted that the court below erred in requiring Magnusson to pay all the costs incurred in the case. The question of costs is so largely within the discretion of the chancellor hearing the cause that Appellate Courts rarely interfere under our practice, and after a careful examination of this entire record we are unable to say that this discretion has not been properly exercised in this regard and that the ruling was correct.

We find no error in this record which, in our judgment, should justify us in interfering with the decree entered therein and that decree is affirmed.

*Decree affirmed.*